ORIGINAL

1   Edgcomb Law Group
    WILLIAM D. MARSH (SBN 200082)
2   MARY E. WILKE (SBN 216723)
    115 Sansome Street, Suite 700
3   San Francisco, California 94104          **FILED**
    Telephone: (415) 399-1115
4   Facsimile: (415) 399-1885
    bmarsh@edgcomb-law.com                   NOV - 4 2011
5
    Attorneys for non-parties Zeneca Inc. and RICHARD W. WIEKING
6   Cherokee Simeon Venture I, LLC            CLERK, U.S. DISTRICT COURT
                                              NORTHERN DISTRICT OF CALIFORNIA
7

8

9              UNITED STATES DISTRICT COURT                    **RS**

10          NORTHERN DISTRICT OF CALIFORNIA **72MISC**
                   **CV 11   80 272MISC**
11

12  CERF SPV I, LLC,                    CASE NO.    N/A

13          Plaintiff,                  (Related to matter pending in Eastern
                                        District of California - Case No. 2:10-
14      v.                              CV-02670 LKK-JFM)

15  CHEROKEE INVESTMENT              **NOTICE OF MOTION AND
    PARTNERS III, L.P., et al.        MOTION OF NON-PARTIES
16                                     ZENECA INC. AND CHEROKEE
        Defendants.                    SIMEON VENTURE I, LLC TO
17                                     QUASH OR, IN THE
                                       ALTERNATIVE, MODIFY FIVE
18                                     RULE 45 SUBPOENAS**

19                                    Date:
                                      Time:
20                                    Courtroom:
                                      Judge: civil miscellaneous matter
21

22

23      **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** Please take

24  notice that on a date and time to be determined by the Court, Zeneca Inc. (Zeneca)

25  and Cherokee Simeon Venture I, LLC (CSV), non-parties to certain litigation pending

26  in the Eastern District of California, will move this Court for an order to quash, or in

27  the alternative modify, five subpoenas issued from this Court that were served by

28

{00025284.DOC-1 }

1   CERF SPV I, LLC (CERF) on CSV and the three environmental consultants of

2   Zeneca and CSV.

3        Such motion is made on the grounds that the five subpoenas should be

4   quashed because they fail to comply with Rule 45(c)(1)'s requirement that a party or

5   attorney serving a subpoena must take reasonable steps to avoid imposing undue

6   burden on third parties.  Furthermore, the subpoenas: (1) are unduly burdensome in

7   seeking vast volumes of documents from non-parties, including documents that

8   CERF already has or can easily obtain from publicly available sources; (2) improperly

9   seek confidential and privileged documents, including drafts and correspondence with

10  counsel, that are protected from disclosure by the attorney-client privilege, the

11  attorney work-product doctrine, and the common interest privilege; (3) seek

12  documents that are not relevant to the claims or defenses asserted in the underlying

13  litigation; and (4) appear to seek commercially-valuable and sensitive information that

14  CERF is not entitled to obtain pursuant to Rule 45(c)(3)(B)(i).  One of the subpoenas

15  was also improperly served.

16       No hearing date has been set as this is a civil miscellaneous matter which must

17  be reviewed and assigned a Judge before a hearing date is set.

18

19

20

21

22

23

24

25

26

27

28

{00025284.DOC-1 }

# I.   INTRODUCTION

Zeneca Inc. (Zeneca) and Cherokee Simeon Venture I, LLC (CSV) request the Court to issue an order quashing, or in the alternative modifying, five Rule 45 subpoenas served by CERF SPV I, LLC (CERF) on CSV and three environmental consultants of Zeneca and CSV.[1]  The subpoena received by CSV was improperly served.  Moreover, all of the subpoenas should be quashed because, *inter alia*, they fail to comply with Rule 45(c)(1)'s requirement that a party or attorney serving a subpoena must take reasonable steps to avoid imposing undue burden on third parties.  In particular, the subpoenas: (1) are unduly burdensome in seeking vast volumes of documents from non-parties, *including documents that CERF already has* or can easily obtain from publicly available sources; (2) improperly seek confidential and privileged documents, including drafts and correspondence with counsel, that are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and the common interest privilege; (3) seek documents that are not relevant to the claims or defenses asserted in the underlying litigation; and (4) appear to seek commercially-valuable and sensitive information that CERF is not entitled to obtain pursuant to Rule 45(c)(3)(B)(i).

Zeneca and CSV have met and conferred in good faith, including agreeing to have their consultants produce a large quantity of documents that may be relevant to the underlying litigation, but CERF has refused to properly limit the scope of the subpoenas.  Thus, the subpoenas should be quashed.  In the alternative, Zeneca and CSV move the Court for an order substantially modifying the subpoenas to limit their scope and lessen their burden, or to shift the cost of production to CERF, as set forth herein.

---

[1] The consultants are Terraphase Engineering, Inc. (Terraphase), Erler & Kalinowski, Inc. (EKI), and Arcadis U.S., Inc. (Arcadis).  Two identical subpoenas were inexplicably served on Arcadis.

1   II.    **STATEMENT OF FACTS**

2    **A. The Investigation and Remediation of the Site Under Regulatory Orders**

3            The property ostensibly at issue in the underlying action is the former Stauffer

4   Chemical Company manufacturing facility (the "Site") that operated from

5   approximately 1897 to 1997.  During its one hundred year history, the Site was the

6   location of the production of numerous chemicals, including sulfuric acid, several

7   pesticides, superphosphate fertilizer, aluminum sulfate, and other industrial chemicals.

8   Since the mid 1990s, the Site has been the subject of extensive environmental

9   investigation and remediation efforts; first by Zeneca, later through Zeneca and CSV's

10   joint efforts, and then recently by Zeneca alone.

11           In 1996, Zeneca hired Levine Fricke[2] as an environmental consultant to

12   investigate and remediate certain environmental conditions at the Site.  Since then,

13   Zeneca has been using Levine Fricke's successor, Arcadis, to investigate and

14   remediate the Site under the auspices of and pursuant to a 2001 Administrative Order

15   issued by the California Regional Water Quality Control Board (RWQCB) and later

16   pursuant to the 2005 and 2006 Investigation and Remediation Orders issued by the

17   California Department of Toxic Substances Control (DTSC).  As a result of these

18   efforts, Zeneca and its remediation consultants and counsel, have generated a massive

19   volume of documents, including reports, drafts, and related emails and

20   correspondence in the effort to clean up the Site and comply with the RWQCB and

21   DTSC orders.

22           Zeneca continues to use Arcadis as its primary remedial consultant at the Site;

23   thus, Arcadis has over fifteen (15) years of documents that are potentially responsive

24   to the Arcadis subpoenas.  Zeneca informed CERF in its first meet and confer letter

25   ───────────────

26   [2]Levine Fricke (later LFR, Inc.) was acquired by Arcadis in 2008.  For convenience,

27   the references herein to "Arcadis" shall additionally refer to Levine Fricke or LFR
    where appropriate.

28   {00025284.DOC-1 }

1  that seeking such a broad scope of documents would cause an undue burden on non-

2  parties because Arcadis initially identified having over 270 technical environmental

3  reports and similar documents, not including a large quantity of drafts and associated

4  e-mails and correspondence. (Declaration of William D. Marsh ("Marsh Decl.") ¶ 11,

5  Exhibit 10.)

6      CSV acquired the Site from Zeneca in December, 2002 and is the current

7  owner. (Marsh Decl., ¶ 2, Exhibit 1, Complaint ¶ 12.) Since then, CSV and Zeneca

8  have worked together as co-respondents to further remediate the Site;[3] first in order

9  to comply with the 2001 RWQCB Order and subsequently pursuant to the two DTSC

10  Orders. (Marsh Decl., ¶¶ 8-10; Exhibits 7-9.) CSV hired Arcadis in 2005 to provide it

11  with remediation consulting services to respond to the 2005 and 2006 DTSC Orders

12  (Arcadis simultaneously performed services for CSV and Zeneca under separate

13  contracts). In 2005, CSV also hired EKI as its independent remediation consultant[4]

14  and thereafter used EKI as its primary consultant until CSV terminated the EKI

15  contract in 2010. Thus, EKI has six years of remedial documents that are potentially

16  responsive to the subpoenas. CSV informed CERF in its first meet and confer letter

17  that EKI identified having over 240 technical environmental reports and similar

18  documents, not including a large quantity of drafts and associated e-mails and

19  correspondence. (Marsh Decl., ¶11, Exh. 10.)

20      In early 2011, Terraphase began to perform remediation services for Zeneca as

21  its independent consultant[5] to respond to the two DTSC Orders, including to assist

22  Zeneca in strategizing to protect Zeneca's interests against potential claims from or

23

24  [3]As is common, Zeneca and CSV's cooperative relationship in responding to the
regulatory orders was memorialized in joint defense agreements to protect against

25  disclosure of confidential drafts of documents that were exchanged between the
parties, their consultants, and their counsel. Zeneca and CSV also entered into such

26  agreements with the University of California, also a respondent to the DTSC Order.

    [4]EKI has never performed work for Zeneca at the Site.

27  [5]Terraphase has never performed work for CSV at the Site.

28  {00025284.DOC-1 }

                                        3

1  against CSV, and at times for or against CERF[6].  In doing so, Terraphase submitted a
2  FS/RAP to DTSC on behalf of Zeneca *and provided CERF with a copy*.  Pursuant to the
3  DTSC Orders, Terraphase has also prepared quarterly groundwater monitoring
4  reports on behalf of Zeneca *and provided CERF with copies*.  Zeneca informed CERF in
5  its first meet and confer letter that Terraphase had identified having over 200
6  technical environmental reports and similar documents, not including a large quantity
7  of drafts and associated e-mails and correspondence.  (Marsh Decl., ¶11, Exh. 10.)
8  **B.  The Loan Agreement and Ensuing Guaranty Litigation**
9       In September, 2007 CERF entered into a Loan Agreement with CSV.  Per
10  CERF's complaint in the underlying action, CSV allegedly defaulted on the loan in
11  March, 2010.  (Marsh Decl., ¶2, Exh. 2.)  CERF filed the Guaranty Litigation in the
12  Eastern District of California against Cherokee Investment Partners III, L.P. and
13  Cherokee Investment Partners III Parallel Fund, L.P. (collectively "Cherokee"), *but not
14  CSV*, to recover on a guaranty allegedly owed to it by defendants.  (Marsh Decl., ¶ 2,
15  Exh. 1.)  CERF essentially alleges in the Guaranty Litigation that Cherokee
16  "guaranteed" certain obligations of the borrower; namely to:
17    • remediate the Site to an industrial standard pursuant to the 2006 Site
18       Investigation and Remediation Order (the "2006 DTSC Order") issued by the
19       California Department of Toxic Substances Control (DTSC);
20    • indemnify CERF for losses under an indemnity agreement; and
21    • periodically re-balance the loan under certain conditions.
22  (Marsh Decl., ¶2, Exh.1, Complaint, ¶¶ 6, 13, 34, 43.)  Importantly, neither Zeneca
23  nor CSV are parties to the Guaranty Litigation.
24
25  _____
26
27  [6]If CERF were to foreclose on the Site, Zeneca could be liable to CERF for certain remedial costs.
28  {00025284.DOC-1 }

1    CERF alleged in the Guaranty Litigation that CSV may also be liable and

2  further indicted in a Joint Status Report that it might sue CSV, so the threat of

3  litigation from CERF has been in the air since at least September 30, 2010.  (Marsh

4  Decl., ¶12, Exh.12.)

5    **C. The Five Rule 45 Subpoenas**

6    CERF served five Rule 45 subpoenas, all issued from this Court, on CSV and

7  three environmental consultants (Terraphase, EKI, and Arcadis) of Zeneca and CSV.[7]

8  The subpoena served on CSV was served on an accountant at Simeon Commercial

9  Properties rather than CSV, CSV's counsel, or CSV's agent for service of process.

10  (Marsh Decl., ¶¶ 16-17, Exhs. 16-17.)

11    The subpoenas, nearly identical to each other, seek such broadly-worded

12  categories of documents as:

13   •  All documents relating to the presence of hazardous waste on the Site (Request

14     No. 1); and

15   •  All documents relating to the remediation of the Site (Request Nos. 3, 6).

16  (Marsh Decl., ¶¶ 3-5, Exhs. 2-4; ¶ 15, Exh. 15.)  Arcadis and Terraphase timely

17  objected to the scope of the subpoenas.  EKI, however, did not object to the

18  subpoena served on it as CSV had requested.[8]

19    **D. The Site Has Been Rife With Threatened And Actual Litigation For**

20       **Many Years**

21    As CERF is keenly aware, in addition to the three regulatory orders and the

22  Guaranty Litigation, the Site has been the subject of the threat of anticipated and

23

24

25  [7]CERF also recently served a deposition subpoena, with identical demands for
   documents, on CSV and Terraphase that were issued from the Eastern District of

26  California.  (Marsh Decl. ¶14, Exh. 14.)

27  [8]CERF recently hired EKI over CSV's objection; raising serious conflict of interest
   issues.

28  {00025284.DOC-1 }

1   actual litigation throughout its recent history.  Specifically, potentially responsive

2   documents were generated by the three consultants during periods when Zeneca

3   and/or CSV relied upon the expertise of their consultants to, *inter alia*: (1) respond to

4   the three regulatory orders to investigate and remediate the Site; (2) defend against a

5   Summary of Violations issued by DTSC; (3) work together on insurance coverage

6   issues to, including the prosecution of a bad faith action against their mutual

7   insurance company; (4) jointly defend against a Business & Professions Code lawsuit

8   filed in by nearby businesses; (5) jointly defend against a Notice of Intent to sue under

9   Proposition 65 issued; (6) defend against a claim asserted against Zeneca by the

10  University of California, located adjacent to the Site; (7) defend against claims asserted

11  against each other; and (8) prepare for the defense of potential claims that may be

12  asserted against them by CERF.[9]  Thus, the Site has been rife with regulatory orders,

13  actual litigation, and potential litigation for several years.

14      **E. CERF Has Refused To Meet And Confer In Good Faith**

15      Shortly after receipt of the subpoenas, Zeneca and CSV extensively met and

16  conferred with CERF in good faith, including attending a conference call with CERF

17  and preparing several meet and confer letters, to no avail.  (Marsh Decl., ¶¶ 6-7, 11-

18  12, Exhs. 10-11.)  Specifically, Zeneca and CSV sent CERF two meet and confer

19  letters on October 3 and October 7, 2011, objecting that the subpoenas: (1) were an

20  undue burden; (2) sought documents irrelevant to the claims and defenses asserted in

21  the Guaranty Litigation; and (3) improperly sought privileged documents.  (Marsh

22  Decl., ¶¶ 11-12, Exhs. 10-11.)  In their October 7, 2011 meet and confer letter,

23  Zeneca and CSV *expressly agreed to having their consultants produce for CERF the final*

24  *environmental technical reports and related documents that had been prepared for CSV and*

25

26  _____

27  [9]CERF alleged in the Guaranty Litigation that CSV could be liable and further
    indicated in its joint status report that it might sue CSV.  (Marsh Decl. ¶ 14, Exh. 12.)

28  {00025284.DOC-1 }

1  *submitted to DTSC.*  EKI produced such documents thereafter and Arcadis has made

2  such documents available to CERF.  (Marsh Decl., ¶16, Exh. 16.)  CERF, however,

3  did not respond to the two meet and confer letters until October 27, 2011, some three

4  weeks later.  Rather than agree to limit the scope of the subpoenas in good faith,

5  CERF ignored the request for CERF to articulate the relevancy of documents that

6  were prepared for Zeneca, and further ignored the requested for extensions of time to

7  file this motion.  In essence, CERF continues to insist that it receive each and every e-

8  mail and scrap of paper generated at the Site for the past fifteen years.

9  **III.   LEGAL ARGUMENT**

10  **A. The Subpoena Issued To CSV Should Be Quashed Because It Was**

11      **Improperly Served.**

12  CERF claims to have served a subpoena on CSV on September 21, 2011.

13  However, CERF improperly served the subpoena on an accountant of Simeon

14  Commercial Properties.  Since Rule 45 does not specify subpoena service

15  requirements on a corporation, courts look to the service requirements in Rule 4(h).

16  *Houston Cas. Co. v. Int'l Grand Tours, Inc.,* 2008 U.S. Dist. LEXIS 117207 at *13 (N.D.

17  Cal. Oct. 22, 2008*).*  Rule 4(h)(1)(B) provides that you must serve an officer, managing

18  or general agent, or any other agent authorized by appointment or by law to receive

19  service of process.  Debra Briggs is CSV's agent for service of process and CSV so

20  advised CERF.  (Marsh Decl., ¶19, Exh. 19.)  An accountant at Simeon Commercial

21  Properties is not an officer or agent of CSV, nor is the accountant listed as the agent

22  of service with the Secretary of State.

23  CSV's counsel obtained the subpoena on October 25, 2011 and immediately

24  sent CERF's counsel a meet and confer letter the next stating that CSV had been

25  improperly served.  After having received the proof of service, CSV's counsel again

26  sent a meet and confer letter to CERF but CERF refuses to acknowledge that it was

27  improperly served and insists on taking the position that CSV waived its privileges.

28  (Marsh Decl., ¶16-19, Exhs. 16-19.)  Thus, CERF never properly served a subpoena

{00023284.DOC-1}
7

1 | on CSV, and, therefore, it must be quashed. *See, Rotter v Cambrex Corp.,* 1995 US Dist

2 | LEXIS 8561 at *4 (ND Ill 1995) (failure to serve a subpoena properly held to

3 | constitute sufficient basis to quash the subpoena).

4 | **B. The Five Subpoenas Are Overbroad And Unduly Burdensome In**

5 | **Violation Of FRCP Rule 45(c)(1).**

6 | Federal Rule of Civil Procedure, Rule 45(c)(1) requires that parties "serving a

7 | subpoena must take reasonable steps to avoid imposing undue burden or expense on

8 | a person subject to the subpoena." *See also, Travelers Indem. Co. v Metro. Life Ins. Co.,*

9 | 228 FRD 111 (2005) (motion to quash granted where information in question was

10 | publicly available from sources that were more convenient, less burdensome, or less

11 | expensive, without subjecting non-party to undue burden); *In re Auto. Refinishing Paint*

12 | *Antitrust Litigation,* 229 FRD 482 (2005) (court imposed limitations on subpoena

13 | served on non-party and ordered party who served subpoena to pay for cost of

14 | production and legal fees).

15 | Instead of agreeing to limit the scope of the subpoenas, CERF has served

16 | overly-broad and unduly burdensome subpoenas that are harassing to non-parties. As

17 | set forth above, CERF's subpoenas broadly seek all communications, data and

18 | documents, including draft documents and e-mails, regarding any hazardous

19 | substances or the remediation of the Site with no limit as to scope and time.

20 | Moreover, CERF has refused to: (1) *not seek the production of documents that it already has;*

21 | (2) obtain the documents from a publicly-available website, namely the DTSC

22 | *EnviroStor* website; and (3) limit the scope of its requests to documents relevant to the

23 | Guaranty Litigation. CERF has not even responded to Zeneca and CSV's repeated

24 | request to articulate why documents other than what has already been produced are

25 | relevant to the Guaranty Litigation.

26 | The burden and cost of reviewing the subpoenas and locating any potentially

27 | responsive documents is already significant. Therefore, if the Court does not find

28 | {00025284.DOC-1 }

8

1   justification to quash the subpoenas to the third parties, we ask that the cost of

2   responding to such overly broad and unduly burdensome subpoenas be shifted to the

3   issuing party, CERF. "In determining whether to award costs to a non-party, the

4   court considers factors, including the scope of the request, the invasiveness of the

5   request, the need to separate privileged material, the non-party's financial interest in

6   the litigation, whether the party seeking production of documents ultimately prevails,

7   the relative resources of the party and the non-party, the reasonableness of the costs

8   sought and the public importance of the litigation." *Tessera, Inc. v. Micron Tech., Inc.*,

9   2006 U.S. Dist. LEXIS 25114, 32-33 (N.D. Cal. 2006). Considering these factors

10  here: 1) the scope of the subpoenas are extremely broad, request publically available

11  documents, privileged documents and duplicative documents; 2) many of the requests

12  ask for privileged and confidential documents; 3) lengthy privilege logs would need to

13  be drafted; 4) the non-parties have no financial interest in the litigation; 5) many of

14  the non-parties are small consultant groups some having only a few employees; 6) the

15  non-parties are requesting to be reimbursed for the time spent reviewing the

16  documents, drafting the privilege logs and copy charges; 7) the Guaranty Litigation is

17  a private matter regarding a loan that is not of public importance. Therefore, the

18  costs of responding to these subpoenas should be funded by CERF.

19

20          **C. CERF Unreasonably Seeks Privileged Documents Prepared In
                Response To Regulatory Agency Orders And The Threat Of
21              Threatened Or Actual Litigation.**

22          Draft reports by consultants hired to respond to agency action are privileged

23  under the attorney-client privilege and attorney work product doctrine. *Raytheon Co. v.*

24  *Superior Court*, 208 Cal. App. 3d 683, 685-686 (1989). Under California law,

25  documents prepared by or at the direction of an attorney while acting in a non-

26  litigation capacity also can be protected as work product. *See Laguna Beach County*

27  *Water Dist. v. Superior Court*, 124 CA4th 1453, 1461 (2004) (attorney's response to

28  auditor's inquiry was protected as work product even though response was not

{00025284.DOC-1 }                                    9

1   created to assist in litigation); *Oxy Res. Cal. LLC v. Superior Court*, 115 CA4th 874, 901

2   (2004); *see also United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 905 (9th

3   Cir. Idaho 2003) (investigation of environmental remediation by environmental

4   consultant in compliance with a Consent Order was protected work product under

5   FRCP 26(b)(3)).

6       As set forth above, Zeneca and CSV's consultants prepared draft documents,

7   and possess numerous drafts, communications, and data pursuant to regulatory

8   orders. Preparing a privilege log for this matter would be extremely time-consuming

9   and unduly burdensome. CERF unreasonably refused to narrow the scope of the

10  subpoenas or to waive the privilege log requirement. In *Raytheon*, the Environmental

11  Protection Agency ("EPA") began investigating Raytheon's property for potential

12  contamination. Raytheon then hired consultants to help respond to the EPA

13  investigation and to analyze and eventually remediate the property. Raytheon

14  subsequently entered into an administrative consent order with EPA regarding

15  contamination on Raytheon's property. The *Raytheon* court upheld Raytheon's claims

16  of privilege over its consultant's documents that were drafted after the date of the

17  administrative consent order and were not submitted to the EPA. Likewise, Zeneca

18  performed environmental investigation and remediation work under regulatory order

19  from the 2001 RWQCB Order and the 2005 and 2006 DTSC Orders. Thereafter,

20  Zeneca's environmental consultants drafted documents in response to the Orders and

21  in anticipation of potential litigation with the agencies and others. Because

22  consultants often create numerous drafts of reports, these three consultants have

23  reams draft documents and communications that would need to be listed on privilege

24  logs. It is unduly burdensome to require a non-party to spend the time and funds

25  draft such a privilege log. *See, OXY Resources California LLC v. Superior Court*, 115 Cal.

26  App. 4th 874, 890 (2004).

27      Moreover, California recognizes a common interest doctrine which allows

28  privileged information be disclosed to necessary third parties without waiver of the
    {00025284.DOC-1}

10

1   privilege. *Meza v. H. Muehlstein & Co., Inc.*, 176 Cal. App. 4th 969, 981-983 (2009);

2   *Oxy Res. Cal. LLC v. Superior Court*, 115 Cal. App.4th 874, 888-889 (2004); *McKesson*

3   *HBOC, Inc. v. Superior Court*, 115 Cal.App.4th 1229, 1239-1240 (2004). Here,

4   confidential and privileged documents exchanged by and between Zeneca and CSV

5   are protected under the common interest privilege.

6        **D. CERF Unreasonably Seeks CSV And Zeneca's Commercially-**

7            **Valuable And Sensitive Documents In Violation of Rule**

8            **45(c)(3)(B)(i).**

9        Rule 45(c)(3)(B)(i) protects against the disclosure of a party's commercially-

10  valuable and sensitive business records. Thus, a court may quash or limit a subpoena

11  that seeks sensitive commercial documents that are trade secrets, confidential

12  research, or development information if disclosure of such is harmful to the

13  producing party. *See, Gonzales v. Google, Inc.* (N. Dist. Cal. 2006) 234 FRD 674, 684-

14  685; *AT&T v Microsoft* (N. Dist. Cal. 2003) 2003 US Dist LEXIS 8710, at *22 . It is

15  vital for courts to protect such proprietary information. *Compaq Computer Corp. v.*

16  *Packard Bell Elec., Inc.,* 163 F.R.D. 329, 338 (N.Dist. 1995). Here, CERF appears to

17  seek databases and data that Zeneca and CSV paid to have prepared by their

18  consultants. It would be unfair to allow CERF, an entity that is poised to foreclose

19  on the Site, to be provided with their work product at no cost.

20       **E. CERF Improperly Seeks Documents Prepared For Zeneca That Are**

21           **Irrelevant To The Guaranty Litigation**

22       Rule 26(b)(1) limits the scope of discovery to documents or information that

23  are relevant to the claims or defenses asserted by the parties. As stated, Zeneca and

24  its consultants have performed investigation and remedial work at the Site since 1996.

25  The Guaranty Litigation, however, concerns alleged guarantees that Cherokee (not

26  even CSV) made to CERF related to the 2006 DTSC Order. Thus, any documents

27  that were prepared exclusively for Zeneca by Arcadis and Terraphase are not relevant

28  to the claims or defenses asserted in the Guaranty Litigation. Zeneca and CSV have

(00025284.DOC-1)

11

1   repeatedly asked CERF to articulate a reason why Zeneca's remedial documents are

2   relevant but CERF has ignored such requests.

3   **IV.   CONCLUSION**

4          Zeneca and CSV, including their consultants, should not be subject to spending

5   endless hours and funds on reviewing documents and drafting extensive privilege

6   logs.  Zeneca and CSV ask this Court to quash the over-broad and unduly

7   burdensome subpoenas served on CSV and their three consultants.

8

9   DATED:  November 4, 2011              Edgcomb Law Group

10

11                                       By:_____

12                                            William D. Marsh
                                         Attorneys for Zeneca Inc. and Cherokee
13                                           Simeon Venture I, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28